UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**CURTIS TAYLOR,**

    **Plaintiff,**

v.

**ANDREW SAUL, Commissioner of Social Security,**

    **Defendant.**

**Case No.: 4:19-cv-399-CLM**

## MEMORANDUM OPINION

Curtis Taylor ("Claimant" or "Taylor") filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") with the Social Security Administration ("SSA"). The Commissioner denied Taylor's claims.

Taylor thus brings this action, alleging four errors on the part of the SSA: (1) that the Administrative Law Judge ("ALJ") used an improper pain standard; (2) that the ALJ "failed to evaluate Claimant's cirrhosis pursuant to Listing 5.05 chronic liver disease"; (3) that the ALJ's determination that Taylor could perform his past relevant work is not supported by substantial evidence; and (4) that the ALJ's determination that Taylor retains sufficient residual functional capacity to perform "light" work is not supported by substantial evidence. Doc. 12 at 1. As explained within, none of these arguments have merit.

1

**Statement of the Case**

**A. Factual Background**

Taylor was 46 years old at the time of the administrative hearing. He has a high school diploma and has completed some college but has not earned a degree. He worked as a welder for 13 years. His most recent employer was Baggett's Trailer Connection in Piedmont, Alabama. He started work there as a painter and continued in that capacity for about two years. He then transitioned into a role as a welder and remained in that position for almost nine years. His final position with Baggett's was as a sales representative, a role he occupied for about six months. Doc. 12, 4. He was terminated in January 2016, supposedly because he "got sick and got put in the hospital." Doc. 8-3, 40.

Taylor testified that he received indication that Baggett's would not be interested in rehiring him. He also testified that he had looked into working for a construction company owned by his father's friend, and he apparently did try working there but could not work a full day and his employer did not like his having to remove his shoes to tend to his feet at regular intervals.

At the time of the hearing before the ALJ, Taylor had custody of his then 18-year-old nephew but was living alone. Taylor had not had a driver license in "about 15 years." He was helping his parents care for three minor children, one of whom had cerebral palsy. *Id.* at 36-38.

**B. Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria listed in 20 C.F.R. Pt. 404, Subpt. P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform her past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering her residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (2019) (Step 1); 20 C.F.R. § 404.1520(c) (2019) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (2019) (Step 3); 20 C.F.R. § 404.1520(e-f) (2019) (Step 4); 20 C.F.R. § 404.1520(g) (2019) (Step 5).

As shown in the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity" ("RFC"), which is the claimant's ability to perform physical and mental work

activities on a sustained basis.

### C. Taylor's Claims and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ, and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4) (2019).

Taylor applied for DIB and SSI benefits in March 2016, claiming that he was unable to work due to various ailments, including cellulitis, cirrhosis, carpal tunnel syndrome, hepatitis C, and back problems. After an initial denial in July 2016, Taylor requested a hearing, which was held on November 9, 2017. The ALJ issued an opinion denying Taylor's claims in March 2018.

At Step 1, the ALJ determined that Taylor was not engaged in substantial gainful activity, and thus his claim would progress to Step 2. Doc. 8-3, 20.

At Step 2, the ALJ determined that Taylor suffered from the following severe combination of impairments: cellulitis and cirrhosis. *Id.* Accordingly, the ALJ proceeded to Step 3.

At Step 3, the ALJ found that none of Taylor's impairments, individually or combined, met or equaled the severity of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. Doc. 8-3, 23. Thus, the ALJ next had to determine Taylor's residual functional capacity.

The ALJ determined that Taylor had the residual functional capacity "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with certain exceptions:

- Taylor was limited to walking/standing for four hours of an eight-hour workday;
- Taylor could not crouch, kneel, or crawl; and,
- Taylor "must avoid all exposure to hazards such as unprotected heights and hazardous machinery."

(*Id.*).

At Step 4, the ALJ determined that Taylor could perform his past work as a sales representative. *Id.* at 25. While unnecessary, the ALJ proceeded to Step 5 and determined that Taylor could perform many jobs in the national economy, such as assembler, wire worker, and garment sorter. *Id.* at 25-26. The Appeals Council denied Taylor's request for review of the ALJ's decision (*id.* at 2), making the ALJ's opinion the decision of the Commissioner.

### D. The Present Case / Standard of Review

Taylor filed this case under 42 U.S.C. § 405(g), which limits this court to determining whether (a) the ALJ made a legal error or (b) the ALJ's fact findings are supported by "substantial evidence." *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The bar for "substantial evidence" is low; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Perales*, 402 U.S. at 401.

## Analysis

Taylor attacks the Commissioner's decision on four grounds. Doc. 12 at 1. The Court will address each of Taylor's arguments in turn.

**I.     Did the ALJ properly apply the pain standard?**

When a claimant relies on subjective testimony regarding pain to support a disability claim, the ALJ must apply the following two-step "pain standard":

1. The claimant must present "evidence of an underlying medical condition"; and, if he does,
2. The claimant must either
    a. Present "objective medical evidence confirming the severity of the alleged pain," or
    b. Show that "the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted).

Taylor claims that the ALJ "accurately stated the pain standard but failed to properly apply the standard." Doc. 12 at 15. Taylor does not, however, explain what the ALJ did wrong; he simply recites the ALJ's decision and then some of the evidence that he (Taylor) presented. Accordingly, the court determines *de novo* whether the ALJ applied the pain standard correctly, then determines whether substantial evidence supports the ALJ's decision.

**A. The ALJ applied the standard correctly.**

The ALJ recited the pain standard thusly:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—*i.e.* an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underyling physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

Doc. 8-3 at 23. Taylor admits this is a correct recitation of the two-step standard.

Doc. 12 at 15.

The ALJ then applied this (admittedly correct) standard to the evidence, *id.* at 23-24, and concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.* at 24. In other words, the ALJ found that Taylor made it past the first step—*i.e.*, he showed evidence of a medically determinable impairment—but not the second step of linking his subjective pain symptoms to the medically determinable

7

impairment. Accordingly, the record refutes Taylor's assertion that the ALJ failed to apply the proper standard.

### B. The ALJ's decision is supported by substantial evidence.

While Taylor fails to couch it this way, his argument is better read as a challenge to the ALJ's conclusion—not a challenge to the law the ALJ applied. So the court's job is to determine whether substantial evidence supports the ALJ's conclusion that Taylor could not show that the objectively determined medical condition(s) could reasonably be expected to give rise to the claimed pain, *see Wilson*, 284 F.3d at 1225, because Taylor's testimony was inconsistent "with the medical evidence and other evidence in the record." Doc. 8-3 at 24.

After reciting Taylor's testimony and the statement of his friend, Tonya Westbrook, both of which supported Taylor's position, *id.* at 23-24, the ALJ recited notes from Taylor's February 2016 hospitalization and notes from Dr. Celtin Robertson's consultative medical examination of Taylor that contradicted the two subjective statements. *Id.* at 24. The ALJ gave "great weight" to Dr. Robertson's opinion that Taylor was limited "to light exertional work" (*id.*) and found it to align with the ALJ's own finding that Taylor could perform light exertional work. Having reviewed the records, including those cited by Taylor in his brief, the court finds that a reasonable mind could reach the same conclusion as the ALJ; thus, the ALJ's decision is supported by substantial evidence.

## II. Did the ALJ properly evaluate whether Taylor's cirrhosis met or equaled Listing 5.05?

The ALJ concluded in Step 3 that none of Taylor's impairments, singly or in combination, met or equaled a listing. Doc. 8-3, 23. Taylor's argument regarding Step 3 can be broken into two parts.

First is Taylor's assertion that the ALJ "made no attempt to determine if the criteria of Listing 5.05 had been met[.]" Doc. 12 at 19. But the record refutes this claim, particularly the ALJ's statement that she "considered **all** of the claimant's impairments individually and in combination…. In making this determination, consideration has been given **all** [*sic*] the listings, with special attention to listings 1.02, 4.00, **5.05**, and 12.06." Doc. 8-3, 23 (emphasis added).

Second is Taylor's argument that, because the ALJ lacked medical expertise, she should have ordered a consultative examination or otherwise sought a professional medical opinion whether Taylor's cirrhosis met or equaled Listing 5.05 (chronic liver disease). Doc. 12, 17-21. Taylor cites *Holladay v. Bowen*, 848 F.2d 1206 (11th Cir. 1988), *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984), and two unpublished opinions from the District of Massachusetts and the Northern District of Georgia, to support his argument. *Id.* at 18-19.

But the quotations Taylor pulls from these opinions merely reaffirm the general rule that the ALJ's decision must be supported by substantial evidence. The language most favorable to Taylor is the Eleventh Circuit's observation that "it is

reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Reeves*, 734 F.2d at 522 n.1. This language, which is not part of the court's holding in *Reeves* ("we do not base our decision on this issue"), does not articulate another requirement beyond the one that an ALJ's decision be supported by substantial evidence. *Id.* It only reaffirms that an ALJ must sufficiently develop the facts to make an informed decision supported by substantial evidence. Examination of the opinion from which the *Reeves* court drew the quoted language makes this clear. *Ford v. Secretary of Health and Human Services*, 659 F.2d 66, 68-9 (5th Cir. 1981). Taylor's argument can thus be reduced to whether the ALJ's determination that Taylor's cirrhosis did not meet or equal Listing 5.05 is supported by substantial evidence.

Taylor cites medical records, containing a finding of "mild early cirrhosis," from a trip to the emergency room in February 2016 to support his contention that he has an impairment that meets or equals Listing 5.05B. Doc. 12, 20-21. There are several different ways a claimant can show that his or her impairment(s) meets or equals Listing 5.05B, but a single doctor's notation that an ultrasound showed "mild early cirrhosis" is insufficient. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 5.05B. As the government points out in its response, a claimant bears the burden of proving that his impairment meets or equals a listing. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). The

Court, based on the record before it, concludes that substantial evidence supports the ALJ's determination that Taylor did not meet that burden.

### III. Was the ALJ's determination that Taylor could perform past relevant work made in accordance with the proper legal standards and supported by substantial evidence?

Taylor contends that the ALJ's Step 4 determination that Taylor could perform his past work as a sales representative is not supported by substantial evidence and that the ALJ failed to properly develop the record on the physical requirements of that job. Taylor cites many cases in the relevant section of his brief for the proposition that an ALJ must develop evidence on the physical requirements of past relevant work or variations on that theme. Doc. 12, 21-25. As was the case with respect to Taylor's previous argument, all of this, boiled down, merely restates the general requirement that an ALJ's decision be supported by substantial evidence from an adequately developed evidentiary record.

The court's task is thus to determine whether substantial evidence supports the ALJ's finding at Step 4. To evaluate whether Taylor could perform past relevant work, the ALJ consulted a vocational expert. That expert testified that, even with his various physical limitations, Taylor could still perform his past work as a sales representative. Doc. 8-3, 54-55.

An ALJ may properly rely on the testimony of a vocational expert and the information in the Dictionary of Occupational Titles ("DOT") and is not required to

develop a factual record about the physical requirements of a particular job. *See* 20 C.F.R. § 404.1560(b)(2) (seemingly contemplating the DOT and expert testimony as the primary sources of relevant information in this context). The court finds that this expert testimony constitutes substantial evidence sufficient to support the ALJ's finding that Taylor could perform his past work as a sales representative.

**IV.     Was the ALJ's finding that Taylor retained the residual functional capacity to perform light work supported by substantial evidence?**

Taylor's final argument is a second attack on the ALJ's RFC finding. This time, Taylor argues that "[w]hile the ALJ summarized the medical evidence, the RFC assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p."

Social Security Ruling 96-8p requires, among other things, that an ALJ provide a "narrative discussion:" "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." That the ALJ failed to provide such a discussion is the heart of Taylor's argument, at least as the court understands it.

In her opinion, the ALJ engages in several pages of discussion, citing hearing testimony, the February 2016 medical report cited by Taylor in his argument about Listing 5.05, records of a consultative examination performed by Dr. Celtin Robertson, and other records. Doc. 8-3 at 23-25. While the ALJ could have added

more explanation that tied each piece of evidence to each conclusion, then weaved each piece into a longer narrative, the court finds that the relevant section of the ALJ's opinion constitutes a "narrative discussion" sufficient to satisfy the requirements of SSR 96-8p.

Having reviewed all the records cited by Taylor and the ALJ, the Court again finds that the ALJ's decision on RFC is supported by substantial evidence.

## Conclusion

As explained above, each of Taylor's arguments boils down to whether the ALJ's decision is supported by substantial evidence. Given the record before it, and the fact that "substantial evidence" is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," the court finds that each step of the ALJ's decision is supported by substantial evidence. *Perales*, 402 U.S. at 401. The Commissioner's decision is therefore due to be **AFFIRMED**.

**DONE** on June 29, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE